same, after reasonable diligence, be ascertained by the deponent. Applying the principle stated in this last case, it would seem that the court was justified in taking this as an allegation that due diligence had been used to ascertain his residence, but that, as such residence could not be ascertained, he could not be served within this state. An examination of the cases in which this question has been presented would serve no good purpose. We have to determine whether the facts sworn to gave the judge jurisdiction to decide the question, not whether, having jurisdiction to decide it, he should have been satisfied by the facts stated; and we think that this affidavit was sufficient to give the court jurisdiction.

The judgment appealed from should, therefore, be affirmed, with costs. All concur.

(59 App. Div. 307.)

### TEATOR v. NEW YORK MUT. SAVINGS & LOAN ASS'N.

(Supreme Court, Appellate Division, Third Department.  March 8, 1901.)

1. BUILDING AND LOAN. ASSOCIATION—WITHDRAWALS—FUNDS FOR PAYMENT—
   FINDINGS OF JURY—EVIDENCE TO SUPPORT.

   The by-laws of the defendant association provided that 90 per cent. of the monthly receipts should be applicable for the redemption of matured shares, and 10 per cent. for withdrawal shares. Plaintiff gave notice of withdrawal of his shares from the defendant association on May 18, 1900, and brought an action to recover the amount due on September 7, 1900. From May 1st to September 1st defendant's receipts applicable to withdrawals amounted to $22,309.70, and notices of withdrawals prior to plaintiff's amounted, during the same period, to $169,000, all of which had been paid except $58,000. Held, that a finding of the jury that defendant had on hand, at the commencement of plaintiff's action, a sufficient sum, applicable to the payment of plaintiff's claim, to discharge it, was contrary to the evidence.

2. SAME—MISAPPROPRIATION OF FUNDS—PROOF—SUFFICIENCY.

   The by-laws of the defendant building and loan association provided that only 10 per cent. of its receipts should be applied to the payment of withdrawals. Plaintiff gave notice of the withdrawal of his shares on May 18, 1900, and commenced an action to recover the amount due on September 7, 1900. From May 1st to September 1st the company received $223,097, and during the same period withdrawals prior to plaintiff's amounted to $169,000, all of which were paid on September 7th, except $58,000, and there remained in the withdrawal fund only $4,000. Held, that the fact that the general manager of the defendant association, with the presumed knowledge of the board of directors, had applied more than 10 per cent. of the receipts to the payment of withdrawals, did not show that the association had sufficient funds, on September 7th, "applicable to the payment of plaintiff's withdrawal," to discharge it, since it did not show that the general manager had authority to make any further application of other funds to the payment of withdrawals.

   Kellogg and Edwards, JJ., dissenting.

Appeal from trial term, Columbia county.

Action by Warren Teator against the New York Mutual Savings & Loan Association. From an order denying a new trial, and from a judgment in favor of plaintiff, defendant appeals. Reversed.

Upon January 1, 1896, this plaintiff became a member of the defendant association by taking 10 shares of stock therein, upon each of which he was to pay 60 cents per month. The shares were to mature when the payments,

together with the apportioned profits, should become of the value of $100 each. At the time plaintiff became a member there was a provision in the articles of association authorizing him to give notice of a withdrawal from said association by surrendering his certificate, and giving 30 days' notice in writing to the secretary, when he should "be entitled to receive the amount paid as monthly dues, with 6% interest for the average time such payments have been with the association to the date of the filing such notice, less a withdrawal fee of one dollar per share." Upon May 18, 1900, the plaintiff made application for withdrawal. He received nothing from the defendant, and upon the 7th day of September, 1900, commenced this action.

Further facts appear in the opinion.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, SMITH, and CHASE, JJ.

Russell & Winslow (John E. Ruston, of counsel), for appellant.
John E. Crandell, for respondent.

SMITH, J. This judgment can only stand upon the finding of the jury that at the time of the commencement of this action the association had on hand funds sufficient for the payment of plaintiff's certificate and applicable thereto. Not only must there have been funds sufficient for the payment of the plaintiff's certificate, but also for the payment of all certificates of the withdrawal of which the defendant had been notified before May 18, 1900, when plaintiff's notice was served. The defendant contends that this finding of the jury was unwarranted by the evidence. Article 16 of defendant's articles of association reads:

"Section 1. The monthly receipts from dues and interest to the credit of the loan fund shall be divided as follows between the matured and withdrawing shares: 90% shall be applicable for the redemption of matured shares and 10% for withdrawing shares. Any funds not applicable as above shall be used to meet approved loans."

By the evidence of defendant's assistant cashier, called as a witness by the plaintiff, it appears that 10 per cent. of the defendant's total receipts in the month of May, 1900, was $3,386.61; in the month of June, $7,980.05; in the month of July, $6,834; in the month of August, $4,101.05. This aggregates $22,309.71, which, under the articles of association, was primarily applicable to the payment of the withdrawal shares from the 18th of May to the commencement of this action. But upon May 18th, when the plaintiff's notice of withdrawal was served, notices of withdrawal of shares had been theretofore served, upon which was payable the sum of $169,000 and upwards. As these moneys were payable before the plaintiff was entitled to his payment, it is clear that, if the 10 per cent. only were applicable to the payment of withdrawal shares, the plaintiff has failed to prove that the association has funds on hand sufficient for the payment of his claim and applicable thereto.

But plaintiff claims that, under the authority of the directors, the association was disregarding this 10 per cent. limitation, and was applying all receipts to the payment of withdrawal shares. He then argues that prior to September 7th, the time of the commencement of this action, if 10 per cent. of the receipts amount to $22,309.71, the total receipts amount to $223,097.10. Granting, for the argument, that the directors have authorized the disregarding of the 10

per cent. limit, and this sum of $223,000 constituted the total receipts of the association, some part thereof was due to the reserve fund, no part of which was applicable to the payment of withdrawal certificates. While the proof is that in May, 1900, there was no matured share unpaid, no evidence in the case indicates whether any or how many shares matured between that time and the commencement of this action which were properly chargeable to this fund. It appears that at the time of the commencement of this action there was on hand in the corporation only about $4,000, and of the $169,000 due upon withdrawing shares prior to the plaintiff's right $58,000 at that time remained unpaid. There is no evidence that any part of this $223,000 of receipts has been improperly expended. In the absence of such proof, with $4,000 only in the treasury, and $58,000 due upon withdrawing claims which were of prior right, the jury was not authorized to find that the association had on hand funds sufficient for the payment of plaintiff's claim and applicable thereto.

Again, no resolution of the directors is shown authorizing the application of more than 10 per cent. of this fund to the payment of withdrawal shares. The only proof upon which the plaintiff can rely to establish that an application of a greater percentage was authorized is the fact that a greater percentage was paid under the authority of the general manager with the presumed knowledge of the board of directors. While from these facts may be inferred an authority to exceed the 10 per cent. limit in the application of funds to the withdrawing shares, it is difficult to see how any authority can be inferred therefrom to make any further application than was in fact made. But this greater authority the plaintiff needs, to show that the funds, even if on hand, were applicable to the payment of his claim. Not only is such greater authority not proven, but it seems to be fairly negatived by the evidence. From the evidence of Dobie, the one witness called upon the subject, the conclusion is clearly read that the association has dedicated to the payment of the withdrawing shares the full sum which was available therefor, and the full sum which they were authorized so to dedicate by the board of directors. We think the plaintiff's cause of action was not proven.

Judgment, so far as appealed from, and order reversed, and new trial granted, with costs to appellant to abide event. All concur, except KELLOGG and EDWARDS, JJ., dissenting.